IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID LOPEZ, § | |
| #49811-177, § | |
| MOVANT, § | |
| § | |
| v. § | CASE NO. 3:18-CV-3406-B-BK |
| § | (CRIMINAL 3:14-CR-266-B-32) |
| UNITED STATES OF AMERICA, § | |
| RESPONDENT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition. As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

In 2016, Movant David Lopez pled guilty to conspiring to possess with intent to distribute a controlled substance and, in 2017, was sentenced to 175 months' imprisonment, well below the guideline range of 210-262 months. *United States v. Lopez*, No. 3:14-CR-266-B-32, Crim. Doc. 1816 (N.D. Tex., 2017), *appeal dismissed*, No. 17-10296, Crim. Doc. 2279 (5th Cir. Mar. 3, 2017). Lopez timely filed this *pro se* Section 2255 motion, alleging ineffective assistance of counsel and challenging the voluntariness of his plea and the forfeiture of cash seized from his home. Doc. 2; Doc. 3. The Government has filed a response opposing Section 2255 relief and Lopez has filed a reply. Doc. 10; Doc. 11.

Upon review, the Court finds that Lopez's claim challenging the validity of his plea is procedurally defaulted and, in any event, that he cannot show that his plea was invalid, that counsel was ineffective or that his forfeiture claim is cognizable. Thus, his Section 2255 motion fails on the merits.

## II. ANALYSIS

To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").

In addition, when challenging the validity of his guilty plea, a movant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). The movant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly).

To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient-

performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688.

Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant bears the burden of showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* In the sentencing context, to establish prejudice, the movant must demonstrate that his sentence was increased by the deficient performance of counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001). As noted in *Glover*, "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

### A. Validity of plea is procedurally defaulted

Lopez challenges the voluntariness of his guilty plea. Having failed to raise the claim on direct appeal, the Court agrees with the Government that, it is procedurally defaulted, absent a showing of cause and prejudice or that the movant is "actually innocent" of the crime for which he was convicted. *See United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)); *see also Bousley v. United States,* 523 U.S. 614, 621 (1998) ("[V]oluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").

Lopez does not satisfy the cause-and-actual prejudice exception to excuse his failure to raise the validity of his plea on direct appeal. Even assuming that cause exists to excuse the procedural default due to counsel's failure to present the issue on appeal, Doc. 3 at 7, Lopez does

not demonstrate that he will suffer actual prejudice since he fails to present a meritorious appellate issue, as discussed *infra*. Likewise, he does not claim his actual innocence.

### B. Guilty plea was voluntary and ineffective assistance claims at plea stage fail

Dissatisfied with his sentence, Lopez makes the related arguments that (1) his plea was involuntary, (2) counsel rendered ineffective assistance in advising him to plead guilty, and (3) counsel and the government improperly coerced him to plead guilty. He asserts that counsel failed to "fully articulate his right to challenge the plea agreement, accompanying factual basis, his right to trial, the improper forfeiture of his son's insurance proceeds and the consequences of entering a guilty plea." Doc. 3 at 4. Lopez avers that counsel did not advise him that stipulations in the factual resume as to drug weight and the $7,956 in cash, which was seized from his home and derived from drug proceeds, could increase his sentence. Doc. 3 at 4; Crim. Doc. 1085 at 4 (factual resume). He adds that the seized funds included about $3,200 in legitimate insurance proceeds that belonged to his son and were seized from his bedroom. Doc. 3 at 8; Doc. 11 at 2.

Further, Lopez states that "he 'felt pressured' into signing the factual resume because if he did not sign it, the prosecution 'threatened … to charge me ten to life.'" Doc. 3 at 5. He alleges that "[t]he factual basis[] was significantly concerning to" him and that, in the end, he "was coerced to plea[d] guilty and agree to the Government's factual statement" and was "under great pressure to restate what his attorney told him to say in Court." Doc. 3 at 5. In his reply, Lopez reiterates his claim that counsel was ineffective in failing to object to the factual resume, specifically the $3,200 that belonged to his son but were converted into drug quantity and used to increase his base offense level (from 32 to 34), resulting in a higher guideline range. Doc. 11 at 2, 4-5.

The record belies Lopez's assertions, however.  In his plea agreement, Lopez affirmed that his plea of guilty was freely and voluntarily made and that he was fully satisfied with his lawyer's legal explanations of the plea agreement, his rights affected by the agreement, as well as alternatives available to him other than entering into the plea agreement.  Crim. Doc. 1086 at 5-6.  Lopez repeated these affirmations at rearraignment.  Crim. Doc. 1955.  He admitted under oath that he understood the elements of the offense to which he was pleading guilty and confirmed that: (1) he had reviewed the plea agreement with counsel and understood all of its provisions; (2) no one had made any promises to induce him to enter into the plea agreement; and (3) he was freely and voluntarily pleading guilty.  Crim. Doc. 1955 at 13-16.  Lopez also affirmed that he had reviewed the factual resume before signing it, and that the stipulated facts contained in it were true.  Crim. Doc. 1955 at 18-19.  He further averred that he was fully satisfied with his counsel's advice.  Crim. Doc. 1955 at 11-12.  Moreover, Lopez acknowledged that he had discussed the sentencing guidelines with counsel.  Crim. Doc. 1955 at 8-9.  He indicated that he also understood that the Court would determine and assess his sentence, after considering the PSR and consulting the Sentencing Guidelines, and that he would be bound by his plea even if the sentence was higher than he expected.  Crim. Doc. 1955 at 10-11.

Other than his belated, self-serving assertions, Lopez offers no reliable evidence to rebut the record and the Court's finding that his guilty plea was knowing and voluntary.  Moreover, because his statements are uncorroborated, they are insufficient to overcome his sworn testimony and conduct during the Rule 11 hearing.[1]  *See Cervantes*, 132 F.3d at 1110 (movant must produce "independent indicia of the likely merit of [his] allegations" to overcome the rearraignment testimony and plea agreement that refuted his allegations).

---

[1] Lopez's *Memorandum* is not sworn under penalty of perjury.  Doc. 3 at 8.

Additionally, contrary to his assertions, Lopez did not "waver[] in his plea" during the sentencing hearing. Doc. 3 at 5. During his allocution, he stated:

> Your Honor, I really don't know where to start. You know, I'm a man that made some mistakes, and I -- you know, in my past, you know. I just don't agree with everything what they are trying to do and accuse me of. I mean, yes, I signed the factual resume. I was scared, and I felt pressured when I signed the factual resume because, I mean, if I get threatened that they are going to charge me ten to life, that pressured me. My attorney did everything he could. He did everything right. . . .
>
> And so that's my fault for not understanding the factual resume. I signed what I did, not understanding it correctly, but I like said, [my lawyer] explained everything.

Crim. Doc. 2026 at 32-33. The Court cautioned Lopez to "be very careful about pulling back on [his] admission of culpability" because the proceedings would have to "start all over again with a not guilty plea." Crim. Doc. 2026 at 33. Lopez conceded that he did not want to withdraw his guilty plea.

> THE COURT: . . . I have to be clear on what position you are taking. I understand there is an issue that you take with regard to the money, but I have to be clear. And I just want you to be careful about just telling me exactly how you feel.
>
> THE DEFENDANT: I understand that, Your Honor.
>
> THE COURT: If you are taking back your guilt, then we will have to have –
>
> THE DEFENDANT: No, ma'am, I'm not. Thank you.

Crim. Doc. 2026 at 33. Based on this record, Lopez's unsupported assertions that counsel misadvised him about his plea and the factual resume and coerced him to plead guilty are clearly contradicted by his attestations in the plea agreement and under oath at rearraignment.

In any event, Lopez has wholly failed to demonstrate prejudice—namely that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Lopez has offered no proof other than his belated, conclusory assertions here that he even considered doing anything other than entering a knowing

and voluntary plea. Doc. 3 at 3 (asserting "that if it was not for his Counsel's ineffective assistance that he would not have … entered a guilty plea, but would have properly objected to the factual basis, and exercised his right to a trial."). In the light of Lopez's solemn assurances under oath of his understanding of the guilty plea process and consequences of his plea, versus the hindsight of an undesired sentence, Lopez falls far short of meeting his burden to prove that he was prejudiced by counsel's allegedly deficient performance.

### C. Ineffective assistance claims at sentencing have no merit

#### 1. *Mitigating Role Reduction*

Lopez asserts that counsel rendered ineffective assistance in failing to argue for a mitigating role reduction under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.2, as clarified by Guideline Amendment 794.[2] Doc. 3 at 7-8. He avers that he should have received a role adjustment for minor or minimal participation because he was (1) "simply a very low level participant in the whole of the conspiracy … in comparison to the other culpable participants and (2) "significantly less culpable than the average participant in the criminal activity." Doc. 3 at 8. Contrary to Lopez's assertion, counsel offered essentially the same argument at sentencing. Crim. Doc. 2026 at 10-11; *see also* Crim. Doc. 1581, Objection to PSR 9. However, the Court found that the evidence did not support Lopez "being a minimal or minor player in any sense" and concluded that the PSR and testimony "support[ed] that he's just a regular player." Crim. Doc. 2026 at 14.

---

[2] Amendment 794, which became effective on November 1, 2015, did not alter the text of U.S.S.G. § 3B1.2, and simply clarified that the court should compare the defendant's role to that of the other participants in the criminal activity at issue, and not to that of participants in other, similar crimes. USSG §3B1.2, comment 3(A).

The fact that counsel did not prevail does not make him ineffective. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (holding that unsuccessful efforts do not constitute ineffective counsel relief). The record is clear that the Court considered and rejected a role reduction under USSG §3B1.2. Thus, Lopez's argument is baseless and he cannot demonstrate that counsel's alleged deficient performance resulted in a higher sentence.

2. *Failure to object to drug quantity*

Next, Lopez asserts counsel was ineffective in failing to present "a drug quantity challenge" at sentencing, i.e., object to the conversion of the $7,956 in cash into a drug quantity. Doc. 3 at 4; Doc. 11 at 2. He contends that counsel should have argued that the approximate $3,200 found in his son's room (1) constituted legitimate insurance proceeds that belonged to his son and, thus, (2) should not have been considered in assessing his base offense level. Doc. 11 at 2-3. Lopez claims that his sentence would have been lower if the $3,200 had not been converted into drug quantity and used to increase his base offense level. Doc. 11 at 4-5.

Relying on Lopez's admission in the factual resume that the $7,956 in cash either was or derived from drug proceeds, the Court overruled defense counsel's objection to the Presentence Report (PSR) and converted the entire amount into drug quantity. Crim. Doc. 2026 at 7-8, 19; Crim. Doc. 1085 at 4. However, because the conversion increased the base offense level by two levels (from 32 to 34), counsel sought a departure under the 18 U.S.C. § 3553 factors. Crim. Doc. 2026 at 30. At Lopez's insistence, counsel further explained regarding his son's $3,200:

> Judge, what he is bringing up is -- and possibly they are saying that there was an admission in the factual resume of this money that was seized. The money was found in two different locations. Almost 5,000 was in a bedroom that he and his wife were in. And the balance of it was in his son, David Lopez, Jr.'s, room. He had gotten a settlement from an accident that he had used to buy another car from the accident. And it's been his -- David's position all along -- whether we didn't think that that was important when we did the factual resume, and I have already said to the Court we don't want to contradict anything that's in the factual resume -- but

>the balance over that $4,800 was in his son David, Jr.'s, room. Now, again, we are very close to the difference between a 34 and a 32 at this point, so we would like the Court to at least take that into effect when it considers the sentence to assess.

Crim. Doc. 2026 at 31-32.

On this record, Lopez again fails to show counsel's deficient performance or resulting prejudice. Because the Court relied on his admissions in the factual resume that the cash seized was derived from drug proceeds, counsel cannot be deemed ineffective for failing to object at sentencing. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness." (quotations and quoted case omitted)). Again, however, the record indicates that counsel, while deftly preserving Lopez's acceptance of responsibility reduction, presented Lopez's claim that part of the money converted into a drug quantity for Guidelines calculation purposes was not drug proceeds. It also appear that Lopez benefitted significantly from his counsel's approach, since based on counsel's arguments, the Court departed well below the advisory guideline range (210-262 months) to 175 months. Even excluding the $3,200 in insurance proceeds, the sentence Lopez received would still have been on the low end of the revised guideline range of 168-210 months.[3]

### D. Ineffective assistance claim on appeal fares no better

Lopez asserts that appellate counsel "fail[ed] to file and perfect a full appeal on [his] behalf." Doc. 3 at 6; Doc. 3 at 3 (acknowledging counsel appealed but filed an *Anders* brief based on the appellate waiver). In essence, he asserts that counsel provided ineffective assistance in filing an *Anders* brief when he could have challenged on appeal "the factual basis[] and voluntary nature of his plea agreement." Doc. 3 at 6. Lopez contends that he "was adamant

---

[3] Based on an offense level of 33 and a Criminal History Category of III, the advisory guideline range would have been 168-210 months.

about appealing his sentence and the application of the guidelines, and several sentencing enhancements . . . [e]specially those concerning the improper forfeiture of his son's insurance proceeds, factual basis, involuntariness of his plea, and drug conversions." Doc. 3 at 7.

However, the ineffectiveness claim is meritless because Lopez waived his right to challenge his sentence on direct appeal, except in very limited circumstances not applicable here, and he does not claim that his waiver was unknowing or involuntary or how his arguments would have survived the waiver. Lopez states simply that he is "contest[ing] the voluntariness of his original plea . . . and the accompanying waiver." Doc. 3 at 3; *see also* Doc. 3 at 6 (mentioning only that "waivers are not enforceable … if ineffective assistance of counsel was received in negotiating the plea").

For reasons previously stated herein, Lopez's claim that his plea was involuntary is meritless. Thus, appellate counsel correctly concluded that there was no non-frivolous issue warranting briefing on the merits. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that when petitioner asserts appellate counsel erroneously failed to file merits brief, he can satisfy the first part of the *Strickland* test by showing that a reasonably competent attorney would have found that at least one of his claims presented a non-frivolous issue). Moreover, Lopez was given the opportunity in the appellate court to raise whatever claims he desired. However, that Lopez had no non-frivolous issue to raise on appeal is apparent in the appellate court's dismissal of his appeal as frivolous.

### E. Forfeiture claim is not cognizable

Lastly, Lopez challenges the forfeiture of the cash seized from his home because it belonged in part to his son. Doc. 3 at 8. However, only "claims relating to unlawful custody" are cognizable under 28 U.S.C. § 2255. *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir.

1994) (dismissing § 2255 monetary fine claim for want of jurisdiction); *see also United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) ("[C]omplaints concerning restitution may not be addressed in § 2255 proceedings."). Because Lopez contests only the forfeiture of funds, not the validity of his conviction or sentence, "his claim is not cognizable under § 2255." *United States v. Banguera,* 62 F.3d 393, 1995 WL 449891, at *1 (5th Cir. June 30, 1995) (per curiam).

### III. EVIDENTIARY HEARING

In his reply, Lopez contends for the first time that he is entitled to an evidentiary hearing. Doc. 11 at 7. However, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))). Because Lopez's claims lack merit for reasons wholly supported by the record, as previously noted, no evidentiary hearing is required. *See United States v. McClinton*, 782 F. App'x 312, 314-15 (5th Cir. 2019) (per curiam) (affirming denial of evidentiary hearing where "contemporaneous evidence" at rearraignment conclusively negated movant's *post hoc* assertions).

## IV. CONCLUSION

The Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on March 31, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).